**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO SHELLY and MAURICE FORBES, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE PROCTER & GAMBLE CO. | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiffs Antonio Shelly and Maurice Forbes (collectively "Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant The Procter & Gamble Co. ("Defendant" or "Proctor & Gamble").

## NATURE OF THE ACTION

1.      Proctor & Gamble has made millions of dollars selling its Oral-B charcoal toothbrush products.  These products include the (1) Oral-B Charcoal Soft Whitening Therapy Toothbrush, (2) Oral-B Clinical Charcoal Battery Powered Toothbrush, and (3) Oral-B Charcoal Electric Toothbrush Replacement Brush Heads Refill (the "Products" or "Charcoal Products").

2.      To capitalize on consumer demand for teeth whitening products, Defendant makes false and misleading representations about its Charcoal Products to sell the Products at a premium price.

3.      Defendant falsely represents that the Charcoal Products' "charcoal-infused bristles" will "naturally whiten[] teeth" in as little as one week.

4.      These advertising claims are false, misleading, and reasonably likely to deceive the public because the Charcoal Products do not in fact provide whitening benefits, and certainly do not provide whitening benefits within one week of use.  In fact, charcoal in dental products such as toothbrushes has been shown to have no meaningful effect on teeth whitening.

5.      Based on Defendant's false and misleading whitening claims, Plaintiffs Antonio Shelly and Maurice Forbes, and the class members they seek to represent, bought Defendant's Charcoal Products at a price premium.  Because Plaintiffs and other like them were taken in by Defendant's false promise of whitening, Plaintiffs bring this class action against Defendant to seek a reimbursement of the premium Plaintiffs and the class members paid based on Defendant's false whitening representations.

6.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiffs and members of the Class, as defined herein, purchased

the Charcoal Products.  Plaintiffs and members of the Class purchased the Charcoal Products because they were deceived into believing the Charcoal Products whiten teeth.  As a result, Plaintiffs and the Class Members purchased the Charcoal Products and have been injured in fact because the Charcoal Products were not effective for whitening.  Plaintiffs and the Class Members have suffered an ascertainable and out-of-pocket loss.  Plaintiffs and the Class Members seek a refund of the price premium they paid for these Products.

7.     A review of all available, reliable scientific evidence demonstrates that the Products' "charcoal infused" bristles have no natural whitening effects, and the Products certainly cannot "whiten[] teeth in 1 week."

8.     Indeed, both the Journal of the American Dental Association and the British Dental Journal have independently found that no scientific literature exists supporting the efficacy of teeth whitening from charcoal-infused dental products.[1]

9.     Plaintiffs assert claims on behalf of themselves and similarly situated purchasers of Defendant's Charcoal Products for violations of the consumer protection laws of California and New York, unjust enrichment, breach of implied warranty of fitness, and breach of express warranty.

**PARTIES**

10.     Plaintiff Antonio Shelly is a resident of San Jose, California, who has an intent to remain there, and is therefore a domiciliary of California.  Plaintiff Shelly purchased the Oral-B Charcoal Soft Whitening Therapy Toothbrush on or about October 2021 at CVS in San Jose, California.  Before purchasing the Product, Mr. Shelly reviewed information about the Product, including the representation that the Product would whiten his teeth.  When reviewing the Product label, disclosures, warranties, and marketing materials, Mr. Shelly understood them as representations and warranties by Defendant that the Product would whiten his teeth.

---

[1] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *Journal of the American Dental Association* (*JADA*) 661, 661 (2017); Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 697 (2019).

11.     Mr. Shelly relied on Defendant's representations and warranties in deciding to purchase the Product over other toothbrush products without whitening claims.  Accordingly, Defendant's representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known Defendant's representations were not true.  In making his purchases, Mr. Shelly paid a substantial price premium due to the false and misleading whitening claims.

12.     Contrary to the representations on the Product's marketing materials, the Product did not whiten Mr. Shelly's teeth.  Mr. Shelly therefore did not receive the benefit of his bargain.

13.     Mr. Shelly remains interested in purchasing the Products and would consider purchasing the Products again in the future if the Products actually provided teeth whitening benefits.

14.     Plaintiff Maurice Forbes is a resident of Monticello, New York, who has an intent to remain there, and is therefore a domiciliary of New York.  Plaintiff Forbes purchased the Oral-B Charcoal Electric Toothbrush Replacement Brush Heads on June 25, 2021 at Sam's Club in Middletown, New York.  Before purchasing the Product, Mr. Forbes reviewed information about the Product, including the representation that the Product would whiten his teeth.  When reviewing the Product label, disclosures, warranties, and marketing materials, Mr. Forbes understood them as representations and warranties by Defendant that the Product would whiten his teeth.

15.     Mr. Forbes relied on Defendant's representations and warranties in deciding to purchase the Product over other toothbrush products without whitening claims.  Accordingly, Defendant's representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known Defendant's representations were not true.  In making his purchase, Mr. Forbes paid a substantial price premium due to the false and misleading whitening claims.

16.     Contrary to the representations on the Product's marketing materials, the Product did not whiten Mr. Forbes's teeth.  Mr. Forbes therefore did not receive the benefit of his bargain.

17. Mr. Forbes remains interested in purchasing the Products and would consider purchasing the Products again in the future if the Products actually provided his teeth whitening benefits.

18. Defendant The Procter & Gamble Co., is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Defendant manufacturers, markets, sells, and distributes the Products throughout the United States. Defendant manufactured, marketed, sold, and distributed the Products during the Class Period. Defendant was responsible for the planning and execution of the advertising, marketing, labeling, packaging and testing of the Products during the Class Period.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different than Defendant.

20. The Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California. Moreover, Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff Shelly's claims arise out of the Defendant's forum-related activities.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff Shelly purchased and used the Products in this District.

## FACTUAL ALLEGATIONS

### *Background on Activated Charcoal*

22. Activated charcoal is charcoal that has been treated with oxygen at very high temperatures. This treatment changes its internal structure, reducing the size of its pores and increasing its surface area, resulting in a fine black powder.



23.     Activated charcoal has adsorptive qualities that have proven to be useful in certain medical contexts.  For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can absorb certain heavy metals, drugs, and other toxins.  The effectiveness of medicinal activated charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug, poison, or toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.

24.     Due to the scientific research substantiating activated charcoal for these specific types of medical treatments, the World Health Organization has added activated charcoal to its Model List of Essential Medicines under the "Antidotes and other substances used in Poisonings" section.[2]

25.     Despite these narrow intended uses for which activated charcoal has been scientifically tested, companies looking to charge a premium have begun advertising activated charcoal as a novel ingredient in a wide variety of products, coupled with unsubstantiated claims about the ingredient's effectiveness.

26.     Examples of recently advertised activated charcoal products and their unsubstantiated claims include the following:  activated charcoal pills that assist in hangover prevention, activated charcoal face cream that results in clearer skin, and even activated charcoal deodorant that absorbs unwanted odors.

27.     The latest trend in product marketing is infusing activated charcoal into dental products and claiming that the products will whiten teeth.

---

[2] World Health Organization, "19th WHO Model List of Essential Medicines," 1, 4 (2015) https://www.who.int/medicines/publications/essentialmedicines/EML_2015_FINAL_amended_NOV2015.pdf?ua=1.

28.     These unsubstantiated charcoal teeth-whitening claims have likely arisen due to the high consumer demand for teeth whitening products.  In fact, the global market for teeth-whitening products is expected to reach $7.4 billion by 2024.

29.     Seeking to capitalize on this lucrative market, Defendant introduced its line of Charcoal Products, bearing representations that the charcoal "infused" products will whiten teeth in as little as one week.

30.     Defendant makes these claims on the Products which include: (1) Oral-B Charcoal Soft Whitening Therapy Toothbrush, (2) Oral-B Clinical Charcoal Battery Powered Toothbrush, and (3) Oral-B Charcoal Electric Toothbrush Replacement Brush Heads Refill.

### *Defendant's Charcoal Representations*

31.     Through extensive and widespread national marketing campaigns, Defendant makes claims that the Products' "charcoal infused bristles" will whiten teeth.  In fact, each of the Products' labels contain the representation that the Products will "naturally whiten[] teeth" or that the Products will "whiten[] teeth in one week."

32.     Defendant communicates the same substantive message throughout its advertising and marketing of the Products, including at point of sale, on the front of the Product packaging:





33.     Each consumer who has purchased the Products has been exposed to Defendant's misleading advertising.

34.     Each of Defendant's Charcoal Products bear the same message: that the product will whiten consumers' teeth.  This message is conveyed through two representations on the Products: "whiten[] teeth in 1 week" and "naturally whiten[] teeth."  These representations appear on the Products' labeling, packaging, and throughout Defendant's extensive online marketing and print advertising.

35.     Defendant specifically advertises that it is the activated charcoal component of its Products that provides the alleged whitening benefits.  The word "charcoal" appears in large font on the font of the Products' packaging and labeling, and Defendant's website

---

CLASS ACTION COMPLAINT                                                                        7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

36.     Throughout Defendant's marketing, charcoal is featured as a key ingredient to support Defendant's whitening claims.  All of the Products include visual depictions of specks of charcoal on the front of the packaging.   For example, Defendant's Charcoal Soft Whitening Therapy Toothbrush prominently features pictures of pieces of charcoal on the packaging and claims that the Product includes "charcoal infused bristles":



37.     Defendant clearly attributes the whitening teeth claims to the presence of charcoal in the Products, as similar lines of Oral-B toothbrushes fail to make such whitening claims. For example, compare the labeling differences between the Oral-B Charcoal electric toothbrush heads (shown in the bottom row below) with other non-charcoal containing Oral-B electric toothbrush heads (shown in the top row below):

  



38.     Defendant's online advertising campaign is in line with the claims made directly on the Products' labels as both allege a relationship between "charcoal-infused bristles" and teeth whitening and prominently display images of activated charcoal throughout:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   39.   Defendant's prominent labeling of the Products' "charcoal-infused bristles" that
17   "whiten[] teeth in 1 week" and "naturally whiten[] teeth," would lead a reasonable consumer to
18   believe that the charcoal will have an actual whitening effect on their teeth.

19   **_Defendant Charges A Price Premium For The Products_**

20   40.   Defendant's advertising and marketing scheme was designed to induce consumers to
21   purchase the Charcoal Products over other toothbrush products, and to do so at a price premium.

22   41.   For example, a subscription through Defendant's own retail website, OralB.com, for
23   the charcoal-infused replacement heads cost $24.99 for a two-pack, while a subscription for a two-
24   pack of Oral-B's Precision Clean replacement heads cost only $18.99, resulting in a $6.00 price
25   premium for the Charcoal Product.   Similarly, a one-time purchase of the charcoal-infused
26   replacement brush heads is nearly $8.00 more than the comparable non-charcoal version:

27
28

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18
19



20

21      42.    For Defendant's Oral-B Clinical Charcoal Battery Electric Toothbrush, Defendant

22 charges nearly a $2.00 price premium, with the Charcoal Product costing $14.97 and a comparable,

23 non-Charcoal battery-powered toothbrush costing $12.99 at retailer Wal-Mart:

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





43.     Defendant also charges a price premium of more than $1.00 for its non-electric Charcoal Products, including its Oral-B Charcoal Soft Whitening Therapy Toothbrush.  For example, Defendant charges $9.79 for a 2-pack of the Charcoal Product, while a comparable two pack of Defendant's non-charcoal toothbrushes sells for $8.49 at retailer Target:










44.     These price premiums are consistent across retailers, including brick and mortar stores, online retailers, and Defendant's own website.

***Charcoal-infused Dental Products Do Not Whiten Teeth***

45.     The consensus of respected dentists, researchers and industry experts weighs against the use of charcoal-infused dental products, due to the lack of scientific substantiation on efficacy.

46.     As of the date of this complaint, there are no peer-reviewed studies focused on the efficacy of whitening claims for charcoal-infused toothbrushes.

47.     But even when looking to the peer-reviewed studies on charcoal-based toothpastes, it is evident that any efficacy claims related to teeth whitening are unsubstantiated.

48.     In 2017, the Journal of the American Dental Association ("JADA") published a review examining the efficacy and safety of charcoal-based dentifrices (defined as a powder, paste, or other material for cleansing teeth).[3]   The JADA authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to assess how the marketing claims of those products

---

[3] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661, 661 (2017).

compared with the available scientific literature evaluating the efficacy and safety of charcoal-based dentifrices.

49.     The JADA authors ultimately concluded that there is insufficient laboratory or clinical data to substantiate the cosmetic or health benefit claims for charcoal dentifrices, including for claims related to teeth whitening.[4]

50.     Two years later, the British Dental Journal ("BDJ") again confirmed a lack of substantiation in the form of scientific, sound and reliable studies.[5]  The 2019 BDJ article concluded that charcoal dentifrices are a "fashionable, marketing gimmick" that could, in fact, cause harm to oral health, structures, and aesthetics.[6]  Additionally, the article expressed concern towards the marketing of charcoal dentifrices that place "a strong emphasis on benefits which appeal to consumers, which have yet to be disproved," and that favor a "scientifically claimed until proved wrong approach… over substantiated, evidence-based promotion."[7]  Notably, the authors lamented that this type of marketing approach of "[f]alse and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection."[8]

51.     Numerous qualified dental professionals have also spoken out on these findings and have raised other safety, therapeutic and cosmetic concerns, cautioning against the use of charcoal-based dental products.[9]

52.     For example, Ada Cooper, DDS, as spokesperson for the American Dental Association ("ADA") has warned that brushing with dentifrices that are too abrasive, like charcoal, "**can actually make your teeth look more yellow**, because it can wear away the tooth's enamel and

---

[4] *Id.* at 669.
[5] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 700 (2019).
[6] *Id.*
[7] *Id.* at 698.
[8] *Id.*
[9] *Beware Whitening Promise of Charcoal Toothpastes*, THE FAMILY DENTAL CTR., Mar. 2019, https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/.

expose the softer, yellow layer called dentin."[10] Cooper expressed concern over charcoal-based dental products, noting that "[j]ust because something is popular doesn't mean it's safe."[11]

53. Charcoal dentifrices also stain teeth. According to Nair Wilson, Emeritus Professor of dentistry at King's College London, brushing with charcoal dentifrices may cause "**negative aesthetic effects**" due to "grey or black marginal charcoal staining" on teeth.[12]



54. As a result of all the above, the ADA has not approved any charcoal dental products, including charcoal-based toothbrushes[13], for its ADA Seal of Acceptance, which certifies the safety and efficacy of dental products based on clinical data and research.

55. Given the body of scientific research on the topic of charcoal dental products, Defendant knew or should have known its claims that the Charcoal Products "whiten[] teeth in 1 week" and "naturally whiten[] teeth" were misleading, deceptive, and/or false and lacked a reasonable basis.

56. Defendant omitted material information, including that scientific literature counter-indicates the efficacy of charcoal in oral care use for teeth whitening. Defendant omitted such material information despite a duty to disclose.

57. Defendant charges a premium for the Products over Oral-B's products that do not contain charcoal.

---

[10] *Id*. (emphasis added).

[11] *Id.*

[12] Linda Greenwall and Nairn Wilson, *Charcoal Toothpastes: What We Know So Far*, CLINICAL PHARMACIST, August 2017, https://pharmaceutical-journal.com/article/letters/charcoal-toothpastes-what-we-know-so-far (emphasis added).

[13] "Toothbrushes with the ADA Seal have had data reviewed by the ADA Council on Scientific Affairs and have met the recommendations for both manual and powered toothbrushes." American Dental Association, *Toothbrushes*, *ADA Seal of Acceptance*, https://www.ada.org/resources/research/science-and-research-institute/oral-health-topics/toothbrushes.

58.     Defendant's representations and omissions were and are materially misleading in that they are likely to deceive a reasonable consumer of their ability to whiten consumers' teeth and cause an inflated perception of their value.  Consumers, including Plaintiffs, would not have paid premium prices, or even purchased the Products at all, but-for the Defendant's representations that the Charcoal Products quickly and naturally whiten consumers' teeth.

59.     As a direct and proximate result of Defendant's misrepresentations, material omissions, and deceptive practices in its advertising and labeling, Plaintiffs and others similarly situated have suffered actual injuries from their purchase of one or more of the Products and did not receive the full value of their purchase.  Defendants have induced Plaintiffs and the Class (as defined below) to purchase the Products, which do not whiten teeth as advertised and may in fact be detrimental and harmful to oral aesthetics.

60.     As a result, consumers have been injured by Defendant's false advertising and unfair and deceptive acts.

## CLASS ALLEGATIONS

61.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased Defendant's Charcoal Products within the relevant statute of limitations period (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

62.     Plaintiff Shelly also seeks to represent a subclass consisting of Class members who reside in California (the "California Subclass").

63.     Plaintiff Forbes also seeks to represent a subclass consisting of Class members who reside in New York (the "New York Subclass").

64.     The New York Subclass and the California Subclass will collectively be referred to as the "Subclasses."

65.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

66.     **Numerosity.**  The members of the Class and Subclasses are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of members in the Class and Subclasses.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

67.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

(a)     Whether Defendant breached an express warranty made to Plaintiffs and the Class;

(b)     Whether Defendant's marketing of the Charcoal Products is false, misleading, and/or deceptive;

(c)     Whether Defendant's marketing of the Charcoal Products is an unfair business practice;

(d)     Whether the Charcoal Products whiten teeth;

(e)     Whether Plaintiffs and the Class suffered an ascertainable loss as a result of Defendant's misrepresentations; and

(f)     Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

68.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated California Civil Code § 1750, *et seq*., California's Consumers Legal Remedies Act; Business & Professions Code § 17500, *et seq*., California's False Advertising Law; and Business & Professions Code §§ 17200, *et seq*., California's Unfair Competition Law.

69.     With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law § 349, Deceptive Acts and Practices Unlawful; and New York's General Business Law § 350, False Advertising.

70.     **Typicality.**  Plaintiffs' claims are typical of the claims of the Class as all of them are similarly affected by Defendant's wrongful conduct.  Plaintiffs, like members of the Class, were exposed to Defendant's false and misleading marketing, purchased the Products, and suffered an economic injury as a result of that purchase.

71.     **Adequacy of Representation**.  Plaintiffs are adequate representatives of the Class and the Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel that are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

72.     **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same

set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

<u>COUNT I</u>
**Breach of Express Warranty**

73.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

74.     Plaintiffs bring this claim individually and on behalf of members of the Class and Subclasses against Defendant.

75.     In connection with the sale of the Charcoal Products, Defendant issued express warranties including that the Charcoal Products would whiten teeth, and whiten teeth in as little as one week.

76.     Defendant's affirmations of fact and promises made to Plaintiffs and the Class on the Charcoal Products' labels and in online advertising, became part of the basis of the bargain between Defendant on the one hand, and Plaintiffs and the Class Members on the other, thereby creating express warranties that the Charcoal Products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

77.     Defendant breached its express warranties because the Charcoal Products do not in fact whiten teeth, and any activated charcoal found in the Products does not provide any whitening benefits.   In short, the Charcoal Products do not perform as expressly warranted.

78.     Plaintiffs and Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Charcoal Products on the same terms if the truth concerning Defendant's Products had been known; (b) they paid a price premium due to Defendant's misrepresentations about the Products; and (c) the Products did not perform as promised.

**COUNT II**
**Breach of Implied Warranty of Fitness for a Particular Purpose**

79.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

80.    Plaintiffs bring this claim individually and on behalf of members of the Class and Subclasses against Defendant.

81.    Defendant marketed, distributed, and/or sold the Charcoal Products with implied warranties that they were fit for the particular purpose of whitening teeth, and providing whitening benefits within one week.  However, the charcoal in Defendant's Products does not whiten teeth.  At the time the Charcoal Products were sold, Defendant knew or should have known that Plaintiffs and the Class Members would rely on Defendant's skill and judgment regarding the efficacy of the Products.

82.    In reliance on Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class Members purchased the Charcoal Products for use in whitening teeth.

83.    The Products were not altered by Plaintiffs or Class members.

84.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and Class members.

85.    Plaintiffs and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Charcoal Products if the true facts concerning their efficacy had been known; (b) they paid an increased price for the Charcoal Products based on Defendant's representations regarding the Products' efficacy; and (c) the Charcoal Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class Members have been damaged.

**COUNT III**
**Unjust Enrichment**

86.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

87.    Plaintiffs bring this claim individually and on behalf of members of the Class against Defendant.

88.    Plaintiffs and Class members conferred benefits on Defendant by purchasing the Products.

89.    Defendant has knowledge of such benefits.

90.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products would whiten consumers' teeth, when they in fact do not.

91.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**

92.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

93.    Plaintiff Shelly brings this claim individually and on behalf of the members of the California Subclass against Defendant.

94.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

95.    Plaintiff Shelly and members of the California Subclass are consumers who purchased Defendant's Charcoal Products for personal, family, or household purposes.  Accordingly, Plaintiff Shelly and members of the California Subclass are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

96.    At all relevant times, Defendant's Charcoal Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

97.     At all relevant times, Defendant was a "person" as that term is defined in Cal. Civ. Code § 1761(c).

98.     At all relevant times, Plaintiff Shelly's purchases of the Defendant's Charcoal Products, and the purchases of Defendant's Charcoal Products by other members of the California Subclass, constituted "transactions," as that term is defined by Cal. Civ. Code § 1761(e).

99.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

100.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Charcoal Products to Plaintiffs and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 et seq. as described above.

101.    Defendant represented its Charcoal Products had sponsorship, approval, characteristics, uses, and benefits which it did not have in violation of Cal. Civ. Code § 1770(a)(5).

102.    Defendant represented the Charcoal Products were of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

103.    Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that the Charcoal Products were effective at whitening teeth, and could provide whitening benefits in as little as one week, when in fact they were not.

104.    Defendant represented that the Charcoal Products were of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that the Charcoal Products whiten teeth, and that they could do so in a little as one week, when the Charcoal Products do not in fact whiten teeth.

105.    Defendant advertised the Charcoal Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant did not intend to sell the Charcoal Products as advertised because Defendant knew that charcoal toothbrush products were not effective at whitening teeth.

106.    Plaintiff Shelly and the California Subclass Members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff Shelly and the California Subclass Members would not have purchased the Charcoal Products if they had known the true facts; (b) Plaintiff Shelly and the Class paid an increased price for the Charcoal Products due to the mislabeling of the Products; and (c) the Charcoal Products did not have the level of quality, effectiveness, or value as promised.

107.    Prior to the filing of this Complaint, Plaintiffs' counsel served a CLRA notice letter on Defendant which complies in all respects with Cal. Civ. Code § 1782(a).  A true and correct copy of the CLRA notice letter is attached as Exhibit A.  The letter was sent to Defendant via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.  Defendant was further advised that in the event that the relief requested was not provided within thirty (30) days, an action would be brought for damages pursuant to the CLRA.

108.    Wherefore, Plaintiff Shelly seeks damages, restitution, and injunctive relief for this violation of the CLRA.

**COUNT V**
**Violation of California's False Advertising Law ("FAL")**
**Business & Professions Code § 17500 *et seq.***

109.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

110.    Plaintiff Shelly brings this claim individually and on behalf of the members of the California Subclass against Defendant.

111.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

112.    Throughout the Class Period, Defendant committed acts of false advertising, as

defined by the FAL, by using false and misleading statements to promote the sale of the Charcoal Products, as described above, and including, but not limited to, representing that the Charcoal Products whiten teeth.

113.    Defendant knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

114.    Defendant's actions in violation of the FAL were false and misleading such that the general public was deceived and is likely to continue being deceived.

115.    As a direct and proximate result of these acts, consumers have been harmed. Plaintiff Shelly and the members of the California Subclass have suffered injury and actual out-of-pocket losses because: (a) Plaintiff Shelly and the California Subclass would not have purchased the Charcoal Products if they had known the true facts regarding the effectiveness of the Products; (b) Plaintiff Shelly and the California Subclass paid an increased price due to the misrepresentations about the Charcoal Products; and (c) the Charcoal Products did not have the promised quality, effectiveness, or value.

116.    Plaintiff Shelly brings this claim pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers.  Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**COUNT VI**
**Violation of California's Unfair Competition Law,**
**Business & Professions Code §§ 17200 *et seq*.**
**(Unlawful Practices)**

117.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

118.    Plaintiff Shelly brings this claim individually and on behalf of the members of the California Subclass against Defendant.

CLASS ACTION COMPLAINT                                                                                          24

119.    The UCL, Bus. & Prof. Code § 17200 *et seq.* ("UCL"), provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for UCL violations.

120.    "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

121.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

122.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express and implied warranties as described herein.

123.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff Shelly and the other California Subclass members suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unlawful prong" violation because: (a) Plaintiff Shelly and the Class would not have purchased the Charcoal Products if they had known the true facts regarding the effectiveness of Products; (b) Plaintiff Shelly and the Class paid an increased price due to the misrepresentations about the Charcoal Products; and (c) the Charcoal Products did not have the promised quality, effectiveness, or value.

124.    Pursuant to Bus. & Prof. Code §17203, Plaintiff Shelly and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**COUNT VII**
**Violation of California's Unfair Competition Law,**
**Business & Professions Code §§ 17200 *et seq.***
**(Fraudulent Practices)**

125.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

126.   Plaintiff Shelly brings this claim individually and on behalf of the members of the California Subclass against Defendant.

127.   The UCL, Bus. & Prof. Code § 17200 *et seq.* ("UCL"), provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

128.   Defendant's conduct, described herein, violated the "fraudulent prong" of the UCL because Defendant represented that its Charcoal Products whiten teeth, when, in fact, they do not.

129.   Plaintiff and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Charcoal Products, and they acted reasonably when they purchased the Charcoal Products based on their belief that Defendant's representations were true.

130.   Defendant knew or should have known, through the exercise of reasonable care, that their representations about the Charcoal Products were untrue and misleading.

131.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff Shelly and the other California Subclass members suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation because: (a) Plaintiff Shelly and the Class would not have purchased the Charcoal Products if they had known the true facts regarding the effectiveness of Products; (b) Plaintiff Shelly and the Class paid an increased price due to the misrepresentations about the Charcoal Products; and (c) the Charcoal Products did not have the promised quality, effectiveness, or value.

132.   Pursuant to Bus. & Prof. Code §17203, Plaintiff Shelly and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c)

interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**COUNT VIII**
**Violation of California's Unfair Competition Law,**
**Business & Professions Code §§ 17200 *et seq.***
**(Unfair Practices)**

133.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

134.    Plaintiff Shelly brings this claim individually and on behalf of the members of the California Subclass against Defendant.

135.    The UCL, Bus. & Prof. Code § 17200 *et seq.* ("UCL"), provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

136.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

137.    Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that Charcoal Products will whiten teeth.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of toothbrush products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about dental care.  Taking advantage of that trust, Defendant misrepresents the effectiveness of its Charcoal Products to sell more toothbrushes.  Consumers believe that Defendant is an authority on the effectiveness and quality of toothbrushes for dental care and therefore believe Defendant's representations that a toothbrush can magically provide whitening benefits, and can do so in as little as one week.

138.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff Shelly and the other California Subclass members suffered injury and actual out-

of-pocket losses as a result of Defendant's UCL "unfair prong" violation because: (a) Plaintiff Shelly and the Class would not have purchased the Charcoal Products if they had known the true facts regarding the effectiveness of Products; (b) Plaintiff Shelly and the Class paid an increased price due to the misrepresentations about the Charcoal Products; and (c) the Charcoal Products did not have the promised quality, effectiveness, or value.

139.     Pursuant to Bus. & Prof. Code §17203, Plaintiff Shelly and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT IX
### Deceptive Acts or Practices, New York Gen. Bus. Law § 349

140.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

141.     Plaintiff Forbes brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

142.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendant's misrepresentations that its Charcoal Products will "whiten[] teeth in 1 week" and "naturally whiten[] teeth."

143.     The foregoing deceptive acts and practices were directed at consumers.

144.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent that the Products will whiten consumers' teeth when they will not.

145.     Plaintiffs and members of the New York Subclass were injured because: (a) they would not have purchased the Products had they known the Products would not whiten teeth; (b) they overpaid for the Products because the Products are sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) the Charcoal Products did not have the characteristics and benefits promised.  As a result, Plaintiff Forbes and the New York

Subclass were damages by the difference in value between the Charcoal Products as advertised and the Charcoal Products as actually sold.

146.   As a result of Defendant's false, misleading, and deceptive statements and representations, including but not limited to the misrepresentations described herein, Plaintiff Forbes and the New York Subclass have suffered and continue to suffer economic injury.

147.   On behalf of himself and members of the New York Subclass, Plaintiff Forbes seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>COUNT X</u>
**False Advertising, New York Gen. Bus. Law § 350**

148.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

149.   Plaintiff Forbes brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

150.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendant's misrepresentations that its Charcoal Products will "whiten[] teeth in 1 week" and "naturally whiten[] teeth."

151.   Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

152.   Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, have resulted in consumer injury or harm to the public interest.

153.   Plaintiffs and members of the New York Subclass were injured because: (a) they would not have purchased the Products had they known the Products would not whiten teeth; (b) they overpaid for the Products because the Products are sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) the Charcoal Products did not have the characteristics and benefits promised.  As a result, Plaintiff Forbes and the New York

Subclass were damages by the difference in value between the Charcoal Products as advertised and the Charcoal Products as actually sold.

154. As a result of Defendant's false, misleading, and deceptive statements and representations, including but not limited to the misrepresentations described herein, Plaintiff Forbes and the New York Subclass have suffered and continue to suffer economic injury.

155. Plaintiff Forbes and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations equal to the price premium.

156. On behalf of himself and members of the New York Subclass, Plaintiff Forbes seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and as representative of all other persons similarly situated, prays for judgment against Defendant, as follows:

(a) An order certifying that the action may be maintained as a Class Action under Fed. R. Civ. P. 23;

(b) An order declaring Defendant's conduct violates the statues referenced herein;

(c) Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Class, and Subclasses against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

(d) Awarding injunctive relief against Defendant to prevent Defendant continuing their ongoing unfair, unconscionable and/or deceptive acts and practices;

(e) For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

(f) Awarding Plaintiffs and members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(g) Awarding such other and further relief as the Court may deem necessary and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial on all issues so triable as of right.

Dated:  March 15, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:___*/s/ Sarah N. Westcot*_____
               Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiffs*